UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JIMARZARETTE ESTEVEZ, DEANNA
MANCINI, and DIANE MEKULI,

                              Plaintiffs,                              **ORDER**

   - against -                                                     No. 18-CV-10350 (CS)

BERKELEY COLLEGE, JOEL MARTINEZ,
GRETCHEN ORSINI, and DAVID BERTONE,

                              Defendants.
-------------------------------------------------------------x

Appearances:

Daniela Nanau
Law Office of Daniela Nanau P.C.
Glendale, New York
*Counsel for Plaintiffs*

Bran C. Noonan
FordHarrison LLP
New York, New York
*Counsel for Defendants*

Seibel, J.

        On June 6, 2022, the Court denied Defendants' motions for fees under Title VII, 42 U.S.C. § 2000e-5(k), 28 U.S.C. § 1927, and the Court's inherent authority, but ordered Plaintiffs' counsel to show cause why the Court should not issue sanctions under Rule 11 of the Federal Rules of Civil Procedure for certain misrepresentations in her filing in opposition to the motion and in support of Plaintiffs' cross-motion to stay consideration of the fees issue. (*See* ECF No. 121 ("Fees Order") at 15.).

        Under Rule 11(b), an attorney presenting a pleading, written motion, or other paper to the Court certifies, among other things, "that to the best of the person's knowledge, information, and

belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions [therein] have evidentiary support." Fed R. Civ. P. 11(b). Where "a district court initiates Rule 11 sanctions *sua sponte* 'long after' the sanctioned lawyer had an opportunity to correct or withdraw the challenged submission," the "lawyer may be sanctioned only upon a finding of subjective bad faith." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (quoting *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003)). "'[B]ad faith' is a relatively loosely defined term of art." *In re Gushlak*, No. 11-MC-218, 2012 WL 2564523, at *2 (E.D.N.Y. July 2, 2012). "[C]ourts in this Circuit have found subjective bad faith in a variety of cases, 'ranging from those involving overtly dishonest or contemptuous behavior, down to those where the court simply regarded an argument as frivolous.'" *Cardona v. Mohabir*, No. 14-CV-1596, 2014 WL 1804793, at *3 (S.D.N.Y. May 6, 2014) (quoting *In re Gushlak*, 2012 WL 2564523, at *2)). Judge Garaufis in *Gushlak* concluded that the standard must lie somewhere in between – in other words "frivolous-plus" – requiring that direct or circumstantial evidence show that the sanctioned party must have known that the position taken was without merit. *In re Gushlak*, 2012 WL 2564523, at *2. "[T]he requisite actual knowledge may be demonstrated by circumstantial evidence and inferred from conscious avoidance." *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11-CV-4383, 2015 WL 4389893, at *15 (S.D.N.Y. July 10, 2015). A finding of bad faith "must be supported by a high degree of specificity in the factual findings, [and] bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (cleaned up).

In the Fees Order, I identified three specific instances where Plaintiffs appeared to misrepresent or mischaracterize the record: (1) the representation that Plaintiff Estevez had

complained to her supervisor David Bertone about co-worker Daniel Lapan commenting that there was "too much estrogen" in the office (the "TME comment"); (2) the representation that Defendants' Human Resources manager Clarissa Gilliam opposed Defendants' decision to fire the three Plaintiffs because she believed that each was engaged in protected activity by complaining about a hostile work environment; and (3) the representation that Gilliam remembered Estevez complaining about the TME comment. (*Id.* at 9 n.8.) The first two of these misrepresentations were repeated by Plaintiffs in briefing on the fees/stay cross-motions, even after the Court had specifically called them out as inaccurate in the Opinion and Order granting Defendants' motion for summary judgment. (*See* ECF No. 96 ("SJ Order") at 18 n.12, 39-40 & n.20.)

Plaintiffs' counsel had claimed on summary judgment that "Estevez did not merely complain to Bertone that Lapan was insubordinate . . . . She complained about Lapan's 'too much estrogen' comments." (ECF No. 87 ("Ps' SJ Opp.") at 26.) In opposition to the fee motion, Plaintiffs' counsel contended that the Court was in error in rejecting that claim as unsupported by the record. (ECF No. 111 ("Ps' Fees Opp.") at 9.) In response to the Court's order to show cause, she now concedes that the record contains no reference to the TME comment being the subject matter of complaints, but says that when she maintained that the Court was in error in finding no support in the record for her assertion that Estevez complained to Bertone about that comment, what she meant was that Estevez complained about Lapan's "insubordination," and it is a fair inference that the "insubordination" included the TME comment. (ECF No. 122 at 7-8.) But counsel did not argue that while the record contained no evidence on the subject, it was a fair inference; she argued that the Court reached an incorrect conclusion by "overlook[ing]" testimony that supported her claim. (Ps' Fees Opp. at 9.)

3

Further, Estevez is counsel's *own client*; had Estevez in fact complained about the comment, it would have been easy enough to have her put in a declaration to that effect.

In any event, it is not a fair inference. Counsel apparently wants the Court to conclude that Lapan's insubordination included not sitting in the same room as Estevez; that Lapan's stated reason for not sitting in the same room was the presence of "too much estrogen"; that when Estevez complained of insubordination, she must have been complaining about the TME comment; and that therefore the employer was on notice that Estevez was complaining about discrimination on the basis of gender. This string of inferences is attenuated at best, and requires one to ignore the fact that despite being asked many questions about the content of her complaints, and going on at length about them, Estevez *never once* said that she raised the TME comment. Even if Estevez subjectively had the TME comment in mind when she complained about insubordination – which she also could have stated in a declaration if it were true – what matters is what the recipient of the complaint reasonably understood. *See, e.g.*, *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (*per curiam*) ("As to the second element of the *prima facie* case, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.") (cleaned up). As I pointed out before, Title VII does not require employers to be mind readers. (*See* Fees Order at 10 n.9.) It is hard to avoid the conclusion that counsel knew perfectly well that her client had not referred to the comment in any of her complaints, but wanted to mislead the Court into thinking there was evidence she had.

Similarly, counsel said in her fee opposition that "Gilliam believed that all three Plaintiffs – including Mekuli – were engaged in protected activity by complaining about a hostile work

4

environment in White Plains, which is why she objected to Defendants' decision to terminate their employment." (Ps' Fees Opp. at 12-13.) She now claims that what she meant is that it was a fair inference that when Gilliam said Plaintiffs should not be fired "with everything that's going on," Gilliam was referring to Plaintiffs' protected activity. (ECF No. 122 at 13.) Again, counsel did not argue a fair inference; she said Gilliam "believed" that Plaintiffs' complaints constituted protected activity. (Ps' Fees Opp. at 12-13.) "[E]verything that's going on" could refer to any number of things other than Plaintiffs' complaints, such as management changes or personality disputes. But even if Gilliam had been referring to Plaintiffs' complaints, there is not a shred of evidence that Gilliam regarded those complaints as "protected activity." Counsel apparently wants the Court to conclude that Gilliam's reference to "everything that's going on" was a reference to Plaintiffs' complaints; that even though Plaintiffs never invoked any protected classification, their complaints were complaints of discrimination based on a protected classification; that Gilliam somehow knew this; and that Gilliam agreed that the complaints related to Plaintiffs' protected status. This string of inferences is hardly fair, and does not overcome the simple fact that Gilliam said nothing about Plaintiffs' protected status. (*See* ECF No. 73-9 at 121:19-122:4.) As the Second Circuit found, there is no evidence from which the employer could even have inferred that Plaintiffs' complaints were about gender-based discrimination. *Estevez v. Berkeley Coll.*, No. 21-1988, 2022 WL 16843460, at *2 (2d Cir. Nov. 10, 2022) ("Employees have offered no evidence that would permit a reasonable factfinder to infer that Estevez's Spring 2017 complaint to a supervisor and Mancini's July 2017 email to a human resources employee – the only instances of protected activities that the Employees properly raised in their opposition to Berkeley College's summary judgment motion – were understood, or could reasonably have been understood, in context as complaints of gender-based

5

discrimination.") There is certainly no evidence that Gilliam "believed" any such complaint had been made. One cannot say something is a fact when it is really an inference one wishes the reader would draw from a fact. One really cannot say something is a fact when the inference one wishes the reader to draw is wholly unsupported.

Finally, counsel argued in the fee brief that "Gilliam remembered speaking to Estevez . . . and that Estevez complained about . . . Lapan's 'too much estrogen' comments." (Ps' Fees Opp. at 12.) Counsel now concedes that Gilliam did not say she was told about the TME comment. (ECF No. 122 at 15-16.)[1] Counsel characterizes her inclusion of that claim in the opposition to the fee motion as an unintentional "mistake." (*Id.*) But she had made *the same claim* on summary judgment, and the summary judgment decision *specifically pointed out* that the evidence on which she purported to base that assertion did not support it. (SJ Order at 18 n.12.) It is hard to imagine that any lawyer attempting to act in good faith would not remember being called out by a federal judge for making an assertion that lacked a factual basis. It is even harder to imagine that a lawyer attempting to act in good faith would then repeat the exact same baseless assertion in a subsequent filing. Indeed, the entire summary judgment decision should have been extremely memorable to Plaintiffs' counsel, as it described five instances in which claims she made were unsupported. (SJ Order at 18 n.12, 36 n.18, 39-40 & n.20.) Good faith would mean double- and triple-checking every assertion of fact in subsequent filings to make sure counsel did not invite further condemnation.

All that said, I cannot conclude that counsel's repeated misrepresentations were the result of subjective bad faith. Rather, they seem to be the result of either a failure of competence

---

[1] Indeed, Gilliam specifically testified that she had not been told of that comment. (ECF No. 115-2 at 89:15-18.)

(perhaps including a lack of understanding of the requirements of a retaliation claim), a serious misunderstanding of the ethical obligations of a lawyer, or a combination of the two. Accordingly, while I will not impose Rule 11 sanctions, I will take action in hopes of ensuring that counsel's egregious actions are not repeated. Pursuant to my inherent authority, *see Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 114 (3d Cir. 2011) (summary order) (sanctions pursuant to inherent authority permitted when "when the conduct is egregious or where the statutory provision is not adequate to sanction the conduct"), Plaintiffs' counsel is ordered to take – in addition to the minimum continuing legal education ("CLE") requirements of all states in which she is admitted – at least three (3) additional CLE hours on each of: a) the law governing retaliation cases; and b) ethical obligations in legal writing. She shall complete the extra CLE within one year and provide documentation to the Court verifying her compliance with this Order no later than November 30, 2023.

**SO ORDERED.**

Dated: November 23, 2022
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.